December 13, 1909.

<hr />

## No. 4777.

(Court of Appeal, Parish of Orleans.)

[St. Paul, J., sitting alone.]

## HENRY L. WEILER vs. POSTAL TELEGRAPH CABLE COMPANY.

<hr />

H. B. McMurray, Jr., for plaintiff and appellee.

Hy. Mooney for defendant and appellant.

### Statement of Case.

ST. PAUL, J.—Plaintiff, then in Cincinnati, telegraphed to his wife in New Orleans, to wire $30 and he would return home on a certain Saturday in May, 1907. The wife sent $20 by telegraph, and, also, a message saying that ten dollars had already been sent by mail. These telegrams were actually on the wires before five o'clock that Saturday evening, but the first effort of the Cincinnati office to deliver them was on the following Monday morning, at ten o'clock, after plaintiff had already left his boarding house, and they were actually delivered late Monday evening.

Plaintiff sues for extra board paid by him and for loss of earnings during the delay; also, for mental anguish.

The Judge of the City Court allowed him actual expenses and loss of earnings, but refused to allow for mental anguish. Defendant appeals.

## Opinion.

One may render services without having bound himself to do so, or he may bind himself to render such services. If he render the services whether bound or not bound, and they be accepted, he should be compensated, but if no services be rendered, he can claim no compensation. Likewise if one receive compensation for services to be rendered, and fail to render any, the compensation should be returned.

Hence, in the mere matter of receiving no compensation where no service has been rendered, it matters little whether one have or have not previously bound himself to render such service.

Accordingly a contract by which one party pays for a service to be rendered and the other party agrees to render such service, but stipulates that the only penalty to which he shall be subjected, in case of his failure or neglect, shall be the return of the price paid for the services he has failed to render, is in its ultimate analysis, nothing more than a mere expression of willingness to earn the price of the service coupled with a distinct disclaimer of any legal obligation to render the service unless so disposed.

Individuals may indeed make such a contract, or more properly speaking, may refuse to contract or obligate themselves at all; but a telegraph company, which in consideration of the service it is bound to render the public, is given valuable privileges, such as the right to expropriate private property, and to pass over public lands without compensation, is in no such favorable position. It is bound by law to accept and transmit all messages

tendered it and accompanied by the usual toll, nor can it make any stipulation the effect whereof would be to deny its obligation toward the public or any single member thereof.

### Revised Statutes 1870, Secs. 696-697-698.

Any stipulation, therefore, by a telegraph company that for failure or neglect to deliver a message it shall be liable for nothing more than the return of the price received for the message, would be null and void as an attempt to repudiate an obligation imposed by law in the public interest, and "for the public good" in return for valuable concessions and privileges granted by the State.

### Civil Code, Art. 11.

But for a Court to hold as a fixed rule of law that the only measure of damages for failure to transmit and deliver messages, in the absence of special contract, is the return of the price paid for the message, is in effect to write such a stipulation into every contract between the telegraph company and the sender of a message; that is to say, to write into the contract that which the law forbids the parties themselves to write into it.

On the other hand, the law itself has already written the contract between the telegraph company and the sender of a message **(R. S., 697)**, and that contract is governed by the same rules which relate to contracts in general.

And it is "well founded on law and supported by the jurisprudence" that where a defendant has violated a contract and subjected plaintiff to inconvenience or annoyance, even though the evidence fails to show the extent in money of the damages thereby sustained, nominal compensatory damages will nevertheless be allowed even though the defendant was not in bad faith.

These views dispense with the necessity for distinguishing between the case at bar, in which the messages were in the plain language of the country, and the cases cited in the very able brief filed for the defendant, where the messages were all in cipher and the strange jumble of meaningless words made nothing more than an unintelligible jargon in which the chances of error were increased a hundredfold, and the opportunity for fraud was well-nigh unlimited.

It also dispenses with any inquiry as to the precise measure of damages in the case, for it is immaterial by what rule the learned Judge a qua fixed the amount of damages arrived at by him, or whether the particular items of damages allowed "were in contemplation of the parties at the time they made the contract."

Suffice it to say that an award of $25.00 or $30.00 would not be an excessive allowance even as "general damages" (2 Greenleaf, par. 254) for the "technical injury" (113 La. 869) suffered by the plaintiff and when we add the amount paid for the messages we reach about the same figures as those found by the City Judge. It certainly cannot affect the propriety of the award that plaintiff did actually suffer a pecuniary loss equal to the amount of the award.

Judgment affirmed.
December 13, 1909.